IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY THOMAS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-6586 |
| | : | |
| LAWRENCE KRASNER, *et al.*, | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

**JOYNER, J.**                                                        **APRIL   1 , 2021**

Plaintiff Gregory Thomas, a prisoner incarcerated at SCI-Albion, filed this civil action pursuant to 42 U.S.C. § 1983 against Philadelphia District Attorney Lawrence Krasner, the "RTKL Law Office" of the Philadelphia Police Department,[1] and the "RTKL Office Philadelphia [District] Attorney's Office." (ECF No. 2 at 1.)[2] Thomas seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and dismiss his Complaint.

    **I.**      **FACTUAL ALLEGATIONS**[3]

Thomas is currently serving two life sentences for two murder convictions and other crimes of which he was convicted in the Philadelphia Court of Common Pleas in 1991. *See*

---

[1] The docket lists "RTKL Law Office" and the Philadelphia Police Department as two Defendants, but the Court understands from context that Thomas intended to sue an entity described as the RTKL Office of the Philadelphia Police Department, with RTKL referring to Pennsylvania's Right-to-Know Law.

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

[3] The following facts are taken from the Complaint and publicly available dockets for Thomas's underlying criminal and related proceedings, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

*Commonwealth v. Thomas*, CP-51-CR-0820411-1990 & CP-51-CR-0316801-1989 (C.P. Phila.). He filed several petitions for post-conviction relief, none of which were successful. *See, e.g.*, *Com. v. Thomas*, No. 1601 EDA 2013, 2014 WL 10889863, at *4 (Pa. Super. Ct. Aug. 8, 2014) (affirming dismissal of Thomas's fifth post-conviction petition). Thomas also unsuccessfully sought *habeas* relief in this Court, *Thomas v. Wolf*, Civ. A. No. 04-1737, 2005 WL 2002609, at *1 (E.D. Pa. Aug. 18, 2005), and the Court of Appeals for the Third Circuit has denied his request to file a second or successive petition. *In re: Thomas*, 3d Cir. No. 12-2334 (May 31, 2012 Order). The dockets for Thomas's state criminal cases reflect pending post-conviction petitions that he last amended on September 9, 2020.

This civil action is motivated by Thomas's desire to seek clemency for the crimes of which he has been convicted. In 2018 he filed a clemency application. (ECF No. 2 at 4.) Thomas alleges that he needs certain information in his "homicide case file" to complete the clemency application pursuant to the applicable rules. (*Id.*) Thomas asserts that the clemency application "requested information contain[ed] inside [his] criminal Homicide files in order for [him] to receive a fair hearing," specifically information about Thomas's "actions in the crime." (*Id.* at 5.) Thomas alleges that he will not receive a fair hearing if he cannot complete the application based on the information in the file. (*Id.*) On August 10, 2020, Thomas contacted the Philadelphia District Attorney's Office and on December 7, 2020, he contacted the Philadelphia Police Department's "Right to Know Law Office" to obtain the homicide file. (*Id.* at 4.) However, he still has not received the file. Thomas attached as exhibits to his Complaint copies of letters and requests he sent to, among others, the Right to Know Law Office of the Philadelphia Police Department and employees of the Philadelphia District Attorney's Office seeking his records to assist with his clemency application.

Thomas alleges that the Defendants' failure to forward this file upon his request violates his First Amendment, Eighth Amendment, and due process rights, as well as his "right to know rights." (*Id.* at 3-4.) Thomas is not seeking release from imprisonment. (*Id.* at 4.) Rather, he seeks "injunctive relief of the Homicide Files so [he] can provide the information to the Board of Pardons" and provide "true and correct statements [and] answers to [his] file for clemency." (*Id.* at 5.) He also seeks $200,000 in damages. (ECF No. 6 at 2.)

The website for the Pennsylvania Board of Pardons, which reviews applications for clemency and makes recommendations to the Governor, explains the current application process. *Pennsylvania Board of Pardons*, at

https://www.bop.pa.gov/Apply%20for%20Clemency/Pages/How-to-Obtain-an-Application.aspx

(last accessed Mar. 29, 2021).[4] According to the website, applications for clemency must contain the following court documents: criminal complaint, affidavit of probable cause, criminal information, plea or verdict, and sentencing order. *Id.* However, the website also states that "incarcerated applicants do not need to obtain court documents to submit with their application." *Id.* The application itself similarly directs applicants to obtain the aforementioned court documents from the Court of Common Pleas in the relevant court of conviction, including proof of payment of financial obligations, and notes that "applicants currently incarcerated, **do not** have to obtain the documents." *See*

https://www.bop.pa.gov/Apply%20for%20Clemency/Documents/Application%20Packet%20-%20Revised%20%2010-16-20.pdf (last accessed Mar. 29, 2021). The remainder of the

---

[4] The Court takes judicial notice of the information published on this government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

application requests the applicant's personal information and information about the offense of conviction, including the date of the incident, the OTN number, the offense or offenses of conviction, a description of the incident, how the applicant was involved, what the applicant did, and how the applicant was caught.  *Id.*  The application also asks for information about additional arrests or convictions.  *Id.*

## II.   STANDARD OF REVIEW

Thomas is granted leave to proceed *in forma pauperis* because it appears that he is unable to pay the costs of filing suit.[5]  As Thomas is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "[M]ere conclusory statements[] do not suffice."  *Id.*  The Court may also consider matters of public record.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  As Thomas is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[5] However, as Thomas is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act ("PLRA").  *See* 28 U.S.C. § 1915(b).  In addition to his Motion to Proceed *In Forma Pauperis*, Thomas filed a "Motion for COVID-19 Payment Waiver Under Extraordinary Circumstance," seeking "waive[r] [of] payment under COVID-19 for his 1983 Civil Complaint."  (ECF No. 4.)  However, the Court has no discretion to waive payments under the PLRA, which are required by statute.  *See Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.4 (3d Cir. 2009) (explaining that "once the Court has granted a prisoner leave to proceed [*in forma pauperis*] in [a case] governed by the [Prison Litigation Reform Act], the prisoner is obligated to pay the fees in full [pursuant to 28 U.S.C. § 1915(b)]"); *see also Ball v. Famiglio*, 726 F.3d 448, 452 n.1 (3d Cir. 2013) (observing that, in accordance with § 1915(b), a "prisoner is still required to pay the costs of her action or appeal, a departure from pre-PLRA practice, paying an initial partial fee followed by installment payments until the entire fee is paid" (internal citation omitted)).  Accordingly, so construed, the motion is denied.

Additionally, when allowing a plaintiff to proceed *in forma pauperis* the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. 28 U.S.C. § 1915(e)(2)(B); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### III.   DISCUSSION

#### A.   Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The essence of Thomas's Complaint is that the Defendants' failure to provide him a copy of his homicide file violates his constitutional rights because it prevents him from proceeding on his clemency application and/or receiving a fair hearing on his clemency application.

The Supreme Court has held that there is no federal constitutional right to executive clemency. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464-65 (1981) (describing an inmate's appeal for clemency as "simply a unilateral hope"). More recently, in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 68 (2009), the Supreme

Court addressed a § 1983 lawsuit filed by a plaintiff claiming a freestanding constitutional right to obtain post-conviction access to evidence for DNA testing that he could use to pursue a petition for post-conviction relief or for clemency. The Supreme Court quickly rejected the plaintiff's interest in clemency as a potential source of a liberty interest cognizable under the Due Process Clause, explaining that since "noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law[,]" one "cannot challenge the constitutionality of any procedures available to vindicate an interest in state clemency." *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009); *see also McKithen v. Brown*, 626 F.3d 143, 151 (2d Cir. 2010) ("The *Osborne* Court concluded that a prisoner has no liberty interest with respect to 'any procedures available to vindicate an interest in state clemency' because clemency is inherently discretionary and subject to the whim, or grace, of the decisionmaker; it is, in other words, a form of relief to which a prisoner has no right." (quoting *Osborne*, 557 U.S. at 68)); *Bowens v. Quinn*, 561 F.3d 671, 673 (7th Cir. 2009) ("There is no Fourteenth Amendment property or liberty interest in obtaining a pardon in Illinois—no substantive entitlement, in other words—and so no ground for a claim of denial of due process."). Since Thomas has no constitutional right to clemency, he also has no constitutional right to require the Defendants to provide materials to assist him in his efforts to obtain clemency.[6]

---

[6] To the extent *minimal* procedural safeguards apply to clemency proceedings, those safeguards are limited to extreme situations — for instance if clemency were determined by a flip of a coin or a prisoner were denied any access to the clemency process. *See PA Prison Soc. v. Cortes*, 622 F.3d 215, 242, 243 (3d Cir. 2010) (explaining that, although pardon and commutation decisions are generally not fodder for judicial review, minimal procedural safeguards apply) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J. concurring)); *Gissendaner v. Comm'r, Georgia Dep't of Corr.*, 794 F.3d 1327, 1331 (11th Cir. 2015) ("Outside of . . . 'extreme situations,' the federal Due Process Clause does not justify judicial intervention into state clemency proceedings."). But Thomas is not challenging the clemency process itself.

Although Thomas has a liberty interest in demonstrating his innocence with new evidence, assuming that is in part what he is trying to do,[7] States have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Osborne*, 557 U.S. at 69; *cf. Grier v. Klem*, 591 F.3d 672, 678 (3d Cir. 2010) ("There is no substantive due process right to access DNA evidence, and procedural due process does not *require* that a district attorney disclose all potentially exculpatory evidence for postconviction relief to a prisoner." (citation omitted)). Thomas may attempt to take advantage of the Commonwealth's post-conviction procedures in connection with his pending post-conviction petitions. While Thomas is also free to seek clemency as another option, he has no free-standing due process right to compel discovery from the Defendants to assist with those efforts. For similar reasons, Thomas has not alleged a basis for a First Amendment claim for denial of access to the courts or for an Eighth Amendment claim based on the Defendants' failure to essentially provide discovery that Thomas seeks to use in connection with his clemency application. *See Cromartie v. Shealy*, 941 F.3d 1244, 1258 (11th Cir. 2019) (explaining that "executive clemency 'cannot be a basis for an access to courts claim'" (quoting *Cunningham v. Dist. Atty's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010)); *Maxwell/G-Doffee v. Wooten*, Civ. A. No. 19-0225, 2020 WL 4196874, at *7 (E.D. Ark. June 23, 2020), *report and recommendation adopted sub nom*, 2020 WL 4196034 (E.D. Ark. July 21, 2020) ("Under well-established law, Maxwell/G-Doffee does not have a liberty interest in clemency sufficient to support a Fourteenth Amendment due process

---

Rather, he is challenging the Defendants' failure to provide him with information that he claims is necessary for him to take advantage of that process. This is the type of due process claim that was squarely rejected in *Osborne*.

[7] Thomas alleges in his letter to Patricia Cummings of the District Attorney's Office's Conviction Integrity Unit that he is innocent and states that, since he cannot establish innocence under that office's standards, he is instead seeking clemency. (ECF No. 2 at 12.)

7

claim or First Amendment access to the courts claim."); *cf. Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1265 (11th Cir. 2012) (consistent with *Osborne*, declining to constitutionalize a right of access to evidence for DNA testing under the Eighth Amendment); *Williams v. McCulloch*, Civ. A. No. 15-00070, 2015 WL 222170, at *3 (E.D. Mo. Jan. 14, 2015) (prosecutor's refusal to conduct postconviction DNA testing "is not punishment" within the Eighth Amendment).

In any event, even assuming the existence of some due process or other constitutional right here, Thomas has not plausibly alleged a basis for proceeding. The Complaint is vague about the specific information that Thomas requires to complete his clemency application or receive a fair hearing. The Complaint suggests that Thomas requires information about his "actions in the crime." (ECF No. 2 at 5.) It appears that Thomas is essentially seeking a description of his criminal acts as proven at trial or otherwise. It is unclear why Thomas requires the homicide file as the source of that information. Having reviewed the Complaint and the Board of Pardons' website discussing the current clemency process, it is not at all clear why Thomas believes his homicide file is required to proceed with his clemency application, that this file is actually required, or how the failure of the Defendants to produce the file would adversely affect Thomas's clemency application. This is another reason why Thomas's claims fail.

### B. Right to Know Law Claims

Thomas also alleges that the Defendants' failure to provide him with the contents of his homicide file violate Pennsylvania's Right-to-Know Law, which allows for review of public records as defined by the statute. *See* 65 Pa. Cons. Stat. § 67.101 *et seq.* However, 28 U.S.C. § 1332(a) provides the only independent basis for this Court's jurisdiction over those claims.[8]

---

[8] The Court will not exercise supplemental jurisdiction over those claims, having dismissed Thomas's federal claims.

That provision grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). The Complaint does not allege the parties' citizenship and it appears likely that the parties are all Pennsylvania citizens. Accordingly, the Court lacks jurisdiction over Thomas's state law claims.

IV. **CONCLUSION**

For the foregoing reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and dismiss his Complaint. Thomas's constitutional claims will be dismissed with prejudice because amendment of those claims would be futile. His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, and he may refile those claims in an appropriate state court.[9] Thomas's request for counsel, which is contained in his Complaint, is denied. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.

**BY THE COURT:**

**J. CURTIS JOYNER, J.**

---

[9] The Court expresses no opinion on the merit of those claims.

9